IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA       )
      )
      v.       )       CR. NO. 2:20-cr-222-ECM-JTA
      )
TERRILL TREMAYNE TAYLOR       )

## <u>REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE</u>

This matter is before the court on Defendant Terrill Tremayne Taylor's Motion in Support of a *Franks* Evidentiary Hearing (Doc. No. 41) and Supplemental Motion to Suppress (Doc. No. 47).  Taylor's motion for a *Franks*[1] hearing alleges that the affidavit submitted in support of a warrant to search his residence omitted information material to the issuing judge's finding of probable cause.  His motion to suppress alleges that law enforcement officers conducted a warrantless search of his premises and that the physical evidence seized by law enforcement, and any "derivative evidence (or 'fruit') of those items and statements[,]" should be excluded from use at trial.  The court conducted hearings on Taylor's respective motions on February 25, 2021 and March 3, 2021.  (*See* Doc. No. 46; Doc. No. 64, Tr.)  After due consideration of the parties' arguments, the evidence and applicable law, the Magistrate Judge concludes that both motions are due to be denied.

---

[1] In *Franks v. Delaware*, 438 U.S. 154, 155 (1978), the United States Supreme Court recognized a "right . . . to challenge the truthfulness of factual statements made in an affidavit supporting a warrant."

## I.  FACTUAL BACKGROUND

According to Alexander Pope, "To err is human . . . ."  It appears Defendant Taylor disagrees with that proverbial phrase as the crux of the issue before the court is whether too many errors should result in suppression of evidence at trial.

In May 2019, Captain David Wizorek ("Wizorek") of the Montgomery Police Department ("MPD") was the commander of the Special Victims Unit.  (Doc. No. 64, Tr. at 6-7.)  On May 7, 2019, Wizorek was contacted by Sergeant Jeff Davis ("Davis") of the Montgomery County Sheriff's Department regarding three videos Davis received from a person in the Birmingham area.  (*Id*. at 7-8; Doc. No. 55-1 at 3.)  The video depicted the physical assault of L.B., a female, which included punching, kicking, choking, and what appeared to be a forced sexual encounter.  (Doc. No. 64, Tr. at 8.)  On May 8, 2019, Wizorek spoke to L.B., who stated she lived at the residence shown in the video with the alleged assailant, Terrill Tremayne Taylor ("Taylor"), with whom she was in a romantic relationship.  (*Id*. at 8, 33.)

The following morning, on May 9, 2019, Wizorek prepared an affidavit for a warrant to search Taylor's residence at 3488 Wilmington Road in Montgomery by using a template provided by MPD Sergeant A. E. Magnus ("Magnus").  (*Id*. at 10-11.)  Wizorek's search affidavit and supplement describes the violence against L.B. shown in the videos, how Wizorek became aware of the videos, that L.B. was known to be Taylor's girlfriend and that L.B. was staying with Taylor in the area of Wilmington Road.  (Doc. No. 55-1 at 3-4.)  The search affidavit and supplement also set forth Wizorek's discovery of a MPD report dated May 2, 2019 alleging physical abuse by Taylor toward L.B., and Wizorek's

consultation with MPD Sergeant Nunn ("Nunn"), who was investigating L.B.'s domestic violence report.  (*Id*.)  The affidavit supplement provides that Nunn told Wizorek that L.B. was extremely afraid of Taylor and that L.B. had not cooperated with Nunn out of fear of additional violence and humiliation.  (*Id*. at 4.)  The affidavit supplement also provides Wizorek informed Nunn of the videos and solicited Nunn's help in meeting with L.B.  (*Id*. at 4.)  The affidavit supplement describes the meeting Davis, Nunn and Wizorek had with L.B. on May 8, 2019, and provides that on that date L.B. was willing to cooperate in prosecuting Taylor despite his threat to release the videos to her friends and family if she went to law enforcement.  (*Id*.)  The affidavit supplement closes with Wizorek's request to search Taylor's residence for evidence of Rape in the First Degree, Sexual Abuse in the First Degree, Domestic Violence Assault, Strangulation and Human Trafficking in the First Degree.  (*Id*.)  The search request encompassed any electronic devices used for recording, cellular telephones, computers, electronic storage devices, firearms, sexual instruments, or any evidence indicating that Taylor committed the listed offenses.  (*Id*.)

Although Wizorek's search affidavit and supplement stated that he was the affiant presenting the factual background for probable cause, Magnus' name appeared as the affiant on the actual search warrant.[2]  (Doc. No. 55-1 at 1; Doc. No. 64, Tr. at 11-12.) Montgomery County District Judge Tiffany McCord approved the warrant ("the residence warrant") by affixing her signature and indicating that she did so at 8:41 a.m. on May 9,

---

[2] According to Wizorek, the error was not detected by the Montgomery County Assistant District Attorney with whom he consulted, nor by Montgomery County District Judge Tiffany McCord, who reviewed the affidavit.  (Doc. No. 64, Tr. at 35-37.)

2019.  (Doc. No. 55-1 at 1.)  Wizorek signed and dated his affidavit, "probably a couple minutes after" Judge McCord approved the warrant, using military time to indicate that he did so at 0849 hours.[3]  (Doc. No. 55-1 at 4; Doc. No. 64, Tr. at 14-15, 68.)

Around the same time on May 9, 2019 that Wizorek was obtaining approval of the search warrant application, Davis detained Taylor at the Montgomery County Probate Court.[4]  While detained, officers took Taylor's keys from his person and used them to enter his residence.  (Doc. No. 64, Tr. at 16.)  Wizorek wrote on the search warrant that officers entered Taylor's home at 10:02 a.m. and exited at 11:20 a.m.  (*Id.* at 16-17, 22-23.)  However, a still photograph from Taylor's home surveillance system depicts Wizorek and other officers shortly after they entered the residence with a date and time stamp of May 8, 2019 at 9:18 p.m.[5]  (*Id.* at 17-18.)  Law enforcement seized the following items from the search:  a DVR box, sex toys, a .22 drum magazine, a .22 Ruger rifle, a Stag Arms AR style rifle, two boxes of .22 caliber ammunition, eight boxes of 9mm ammunition, a .22

---

[3] Wizorek testified that it is his habit to have three copies of the warrant and affidavit.  One copy of the documents is for the party whose premises are searched, another copy is for the file, and the third copy is an extra copy in case one is damaged or lost.  (Doc. No. 64, Tr. at 13-14, 61.)  The judge signs each copy of the warrant and Wizorek signs each copy of the affidavit.  (*Id.* at 61, 67.)

[4] Wizorek explained that Davis, or another officer, called Taylor to tell him that there was a child support issue he needed to handle at the courthouse.  (Doc. No. 64, Tr. at 41-42.)  When Taylor arrived at court he was taken into custody based upon the video evidence of his alleged assault upon L.B.  (Doc. No. 64, Tr. at 42.)

[5] Wizorek testified that his team executed the search warrant at 10:00 a.m. on May 9 although the time stamp from the home surveillance photograph indicates that the image of him was captured on May 8 at 9:18 p.m.  (Doc. No. 64, Tr. at 17-19, 57.)  Wizorek also testified that the photograph shows him signing a copy of the search warrant, as it is his practice to leave a copy of the search warrant and an inventory of the list of items seized during execution of the warrant.  (*Id.* at 19-20, 58.)

American Arms handgun, cell phone, Dell CPU tower, a Colt .45 handgun with extended ammunition magazine, and a bulletproof vest. (*Id*. at 20; Doc. No. 55-1 at 5.)

Corporal Jonathan Hicks ("Hicks"), a crime scene investigator for MPD, took photographs to document the search of Taylor's residence. (Doc. No. 64, Tr. at 22.) Metadata from these photographs show that they were taken at a time earlier than the time detailed by Wizorek. Specifically, Wizorek testified that his team entered Taylor's residence at 10:02 a.m., but the metadata for three photographs show that the photographs were taken, respectively, at 9:10 a.m., 9:26 a.m., and 9:44 a.m.[6] (*Id*. at 48-49.) According to Jeffrey Ioimo ("Ioimo"),[7] an MPD officer assigned to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), Hicks did not adjust the camera settings for Daylight Saving Time so the metadata on the photographs taken with that camera during May of 2019 would appear to have been taken one hour earlier.[8] (*Id*. at 79-80, 84, 85.)

After the search concluded at 11:20 a.m. on May 9, 2019, Wizorek and his team returned to MPD where he created a search warrant affidavit to search Taylor's electronic media. (*Id*. at 23-24; Doc. No. 55-5.) This affidavit recounted Wizorek's investigation of Taylor, seizure of the electronic items from his residence, and request to search the

---

[6] Wizorek testified that the photographs were accurate depictions of the items seized but that he had never seen the metadata (which he did not know how to access), he did not take the photographs, and he could not explain the inconsistencies between the search team's entry time and the times the photographs appeared to have been created, according to the metadata. (*Id*. at 49-53.)

[7] Ioimo spoke with Hicks about the photographs he took at Taylor's residence after Ioimo learned that there was a possible issue with the photographic metadata. (*Id*. at 79, 83.)

[8] Daylight Saving Time began in Alabama at 2:00 a.m. on Sunday, March 10 in 2019.

electronic items listed therein.  (Doc. No. 64, Tr. at 24; Doc. No. 55-5.)  Montgomery County District Judge Monet Gaines approved the warrant ("the electronics warrant") at 2:13 p.m. on May 9, 2019.  (Doc. No. 55-5 at 1.)  Judge Gaines indicated on the last page of the warrant however that the search was completed on May 19, 2019.  (Doc. No. 64, Tr. at 25; Doc. No. 55-3 at 3.)

Wizorek returned the search warrants on separate dates.  He returned the residence warrant on May 13, 2019 at 2:14 p.m.  (Doc. No. 64, Tr. at 26; Doc. No. 55-1 at 2.)  He returned the electronics warrant on May 20, 2019, but the document shows the date as May 20, 2011.  (Doc. No. 64, Tr. at 27, 60-61; Doc. No. 55-3 at 2.)  A file stamp placed on the electronics warrant indicates that the document was received in the Circuit Clerk's office on April 20, 2019.[9]  (Doc. No. 64, Tr. at 27-28, 59-60; Doc. No. 55-3 at 2.)

Finally, during the course of the investigation law enforcement discovered that Taylor and L.B. were married.  While Ioimo conducted his investigation into the firearms recovered from Taylor's residence, L.B. informed him that she was separated from Taylor and that the couple had a child.  (Doc. No. 64, Tr. at 76.)  Ioimo searched the records of the Montgomery County Probate Office and located a record indicating that Taylor and L.B. were married on May 22, 2019.  (*Id*. at 76-77.)

---

[9] Wizorek testified that the clerk's stamp showed an incorrect date because he returned the electronics warrant on May 20, 2019, and that he was not responsible for the incorrect stamp date. (Doc. No. 64, Tr. at 28, 61.)

## II.    PROCEDURAL HISTORY

On October 27, 2020, a grand jury sitting in the Middle District of Alabama returned a single-count indictment against Taylor charging him with possession of firearms and ammunition on May 9, 2019 after having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).  (Doc. No. 1.)  On December 8, 2020, Taylor was arraigned and entered a plea of not guilty.  (Doc. No. 8.)

On January 21, 2021, Taylor filed a Motion to Suppress Tangible Evidence (Doc. No. 33)[10] to which the Government responded (Doc. No. 36), and Taylor replied thereto (Doc. No. 38).  Taylor also filed his Motion in Support of a *Franks* Evidentiary Hearing which alleged that due to "multiple unexplainable discrepancies" in the search warrant documents and photographs of the search scene, the warrant for the search of his residence lacked probable cause.  (Doc. No. 41 at ¶¶ 19-21.)  On February 25, 2021, the court conducted a hearing to determine whether Taylor met the standard for a *Franks* hearing. At the conclusion of Taylor's argument, the court informed him that it would recommend denial of his motion for a *Franks* hearing and set the matter for an evidentiary hearing on the motion to suppress.

Prior to the hearing, on February 28, 2021, Taylor filed a Supplemental Motion to Suppress.  (Doc. No. 47.)  Taylor argued that the search warrant documents were "flawed on their face whereas there are several material errors as to the submitted documents which call their validity into question."  (*Id.* at ¶ 10.)  The Government filed a response in

---

[10] This motion was later withdrawn by Taylor.  (Doc. No. 64, Tr. at 3-4.)

opposition to the supplemental motion (Doc. No. 55) and urged the court also to consider the Government's initial brief in opposition (Doc. No. 36) when resolving Taylor's motions.  (Doc. No. 64, Tr. at 103-04.)  The undersigned agreed to consider all of the briefs filed by the Government.  (*Id*. at 104.)  The undersigned also has considered additional briefing by Taylor (Doc. No. 58) and the Government's response thereto (Doc. No. 60).

The matter is ripe for disposition.

### III.   DISCUSSION

A. <u>Taylor's Motion for a *Franks* Evidentiary Hearing</u>

Taylor argues in his motion that "multiple unexplainable discrepancies" in the residence search warrant documents may indicate an intentional manipulation of the documents by law enforcement to obtain "a search warrant to enter the premise [sic] which they did not have."  (Doc. No. 41 at ¶¶ 19, 20.)  His motion alleges the following grounds for an evidentiary hearing:

> (1) the residence warrant named Magnus as the affiant despite Wizorek being the named affiant on the supporting affidavit;
> (2) the metadata for the photographs documenting the officers' search of the residence were taken roughly one hour earlier than the entry/search time documented on the warrant returned by Wizorek;
> (3) the residence warrant lacked probable cause because Wizorek's affidavit did not inform the issuing judge of the marital relationship between Taylor and L.B. or the fact that they are parents of a young child, and the affidavit gave the false impression that Taylor had already been arrested on the state offenses listed therein;
> (4) the returned electronics warrant was stamped April 20, 2019, several weeks prior to the initiation of Wizorek's investigation of Taylor;
> (5) Wizorek failed to denote on the residence warrant whether it was signed by him during the a.m. or p.m. in the presence of Judge McCord on May 9, 2019; and

(6) Wizorek failed to leave a copy of the signed warrant at Taylor's residence.[11]

(*Id*. at ¶¶ 12-17; Doc. No. 41-1 at 35.)

The Government did not file a timely response in opposition to the motion.[12]

B.  Taylor's Supplemental Motion to Suppress

Taylor argues that the search documents created by Wizorek are flawed on their face and did not contain probable cause for law enforcement to enter his residence.  (Doc. No. 47 at ¶¶ 10-15.)   The result, according to Taylor, was a presumptively unreasonable warrantless search.  (*Id*. at ¶ 16.)  The alleged grounds for suppression duplicate in large part the issues Taylor raised in his motion for a *Franks* hearing.  He argues

(1) the residence warrant named Magnus as the affiant despite Wizorek being the named affiant on the supporting affidavit;
(2) the metadata indicating that the photographs documenting the officers' entry and search of the premises took place roughly one hour earlier than the time testified to by Wizorek;
(3) lack of probable cause because Wizorek's affidavit did not inform the issuing judge of the marital relationship between Taylor and L.B. and further, that the affidavit gave the false impression that Taylor had already been arrested on the charges listed therein;
(4) the returned electronics warrant was stamped April 20, 2019, several weeks prior to the initiation of Wizorek's investigation of Taylor;
(5) Wizorek failed to denote on the residence warrant whether it was signed by him during the a.m. or p.m. in the presence of Judge McCord on May 9, 2019; and

---

[11] Taylor acknowledges that an undated and unsigned copy of the residence search warrant and copy of the search inventory sheet was left at the home.  (Doc. No. 64, Tr. at 98-99, 105.)  Taylor asserts a copy of the resident warrant affidavit was not left at the home.  (*Id*. at 105.)

[12] The Government did not meet the court's deadline to file a response to the *Franks* motion before the close of business on February 24, 2021.  (*See* Docs. No. 42, 43.)  The motion was set for an evidentiary hearing for the following morning on February 25, 2021.  (Doc. No. 42.)  The Government filed a motion for leave to file an out of time response which the undersigned denied. (*See* Doc. No. 43; Text Order Entry of February 25, 2021.)

     (6) Wizorek failed to leave a copy of the signed warrant or a photographic image of the same at Taylor's residence which is "customary."[13]

(*Id.* at ¶¶ 16-22; Doc. No. 47-1 at 35.)  Taylor argues suppression is warranted due to the above discrepancies because the "returned executed search documents could all be intentionally manipulated as the primary law enforcement officials . . . discovered they would need a search warrant to enter the premise [sic] which they did not have."  (*Id.* at ¶ 24.)  Taylor also argues that the issuing judge for the residence warrant would not have found probable cause to issue a search warrant if she had been informed of the fact that Taylor and L.B. were married and parents of a child.  (*Id.* at ¶ 25.)

     The Government responds that the residence warrant was not invalid because it showed an incorrect affiant.  (Doc. No. 36 at 8-9.)  The Government also contends the photographs of the search scene were taken during the execution of the residence warrant between 10:02 a.m. and 11:20 a.m. on May 9, 2019, and even if taken an hour earlier per Taylor's argument, they were taken after the issuance of the residence warrant at 0849 hours.  (Doc. No. 55 at 5.)  The Government contends Wizorek's affidavit did not omit material information because Taylor was not married to L.B. when the warrant was obtained, and that a marriage between the two would not have impacted the probable cause determination as to the offenses listed in the affidavit.  (Doc. No. 36 at 5-6; Doc. No. 55 at 6-7.)[14]  The Government asserts the date stamp on the electronics warrant authorizing a

---

[13] Again, Taylor acknowledges that a copy of the warrant was left at the home, but asserts it was unsigned and undated.  (Doc. No. 47 at ¶ 22; Doc. No. 64, Tr. at 98-99, 105.)

[14] The Government notes that Taylor conceded during the hearing on his *Franks* motion that L.B. had not given birth to their child on May 9, 2019.  (Doc. No. 55 at 6.)

search of Taylor's electronics was incorrect and is an insubstantial claim.  (Doc. No. 55 at 4.)  The Government also contends that no indication of a.m. or p.m. was necessary on the affidavits because Wizorek used military time when signing them.  (*Id*. at 4-5.)  The Government further contends that the failure to take a picture of the signed warrant does not affect probable cause or the constitutionality of the search and Taylor does not dispute that a copy of the search warrant was left at the residence.  (*Id*. at 5).  Finally, should the court find that the residence warrant was invalid, the Government argues the *Leon* good faith exception[15] applies to the evidence seized from Taylor's residence.  (Doc. No. 36 at 11.)  The Government also argues that in the event of such a finding, the exclusionary rule should not be applied because the rule's purpose is the deterrence of unlawful police conduct.  It submits that because the officers investigating Taylor acted in good faith and did not deliberately engage in unlawful conduct, the application of the rule would not serve its purpose.  (*Id*. at 12.)

C.  Governing Legal Principles

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  The Amendment specifies that "no Warrants shall issue, but upon probable cause . . . and particularly describing the place to be searched, and the persons or

---

[15] In *United States v. Leon*, the Supreme Court created a "good faith exception" to the exclusionary rule where Fourth Amendment violations would otherwise prohibit the use of evidence seized during an unconstitutional search.  468 U.S. 897, 913 (1984).  The exception applies where evidence is obtained "by officers reasonably relying on a warrant issued by a detached and neutral magistrate," that is subsequently invalidated for lack of probable cause.  *Id*.  The undersigned need not reach *Leon* in resolving the issues before the court.

things to be seized." *Id*. "It is thus perfectly clear that the evil the Amendment was designed to prevent was broader than the abuse of a general warrant.  Unreasonable searches or seizures conducted without any warrant at all are condemned by the plain language of the first clause of the Amendment." *Payton v. New York*, 445 U.S. 573, 585 (1980).  This means a warrant generally must be obtained to search a residence unless an exception applies. *Kentucky v. King*, 563 U.S. 452, 459 (2011).

"The Fourth Amendment requires that a search warrant be issued only when there is probable cause to believe that an offense has been committed and that evidence exists at the place for which the warrant is requested." *United States v. Betancourt*, 734 F.2d 750, 754 (11th Cir. 1984) (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 558 (1978)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts"—and must be judged on the totality of the circumstances presented in each case. *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

When reviewing an affidavit in support of a search warrant, the Supreme Court has stated that a magistrate should look to the totality of the circumstances, and that his task

> is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Gates*, 462 U.S. at 238-39; *see also United States v. Karpordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009).  The Eleventh Circuit has explained:

> When called upon by law enforcement officials to determine the legitimacy of search warrants and their supporting affidavits, issuing magistrates and reviewing courts alike must strike a delicate balance between constitutional guarantees against excessive intrusions into areas of individual freedom and the Government's need to access and to secure relevant evidence in criminal prosecutions.  In particular, issuing magistrates are given the unenviable task of making "firing line" decisions that attempt to encourage availment of the warrant process while simultaneously striving to protect citizens from unwarranted governmental interference.  In recognition of the difficulty inherent in discharging this responsibility, reviewing courts lend substantial deference to an issuing magistrate's probable cause determinations.

*United States v. Miller*, 24 F.3d 1357, 1363 (11th Cir. 1994).  "Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner." *Id*. at 1361 (citation omitted).  Instead, "a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations." *Id*. (citation omitted).  Otherwise stated, "[a] federal court does not review a state judge's probable-cause determination *de novo*, but rather considers only whether the evidence viewed as a whole provided a 'substantial basis' for the finding of probable cause at the time the warrant was issued." *United States v. Snipes*, 444 F. Supp. 2d 1203, 1206 (M.D. Ala. 2006) (citing *Massachusetts v. Upton*, 466 U.S. 727, 732-33 (1984) (per curiam)).

"It is critical to a showing of probable cause that the affidavit state facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) (quoting *United States v. Hove*, 848 F.2d 137, 140 (9th Cir. 1988) (citation omitted)).  To the extent an affidavit relies on hearsay, such as a tip given by a confidential informant or

anonymous source, the speaker's veracity, reliability, and basis of knowledge are relevant for purposes of assigning value to the information. *Gates*, 462 U.S. at 230; *see also Martin*, 297 F.3d at 1314. However, "[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *Martin*, 297 F.3d at 1314.

The burden of establishing that a search warrant is defective is upon the defendant. *United States v. Lockett*, 533 F. App'x 957, 965 (11th Cir. 2013) (citation omitted) ("When a search is conducted pursuant to a warrant, the burden is on the defendant to show that the warrant is invalid."); *see also Franks v. Delaware*, 438 U.S. 154, 171 (1978). The court's consideration of a defendant's facial challenge to a search warrant is confined to the "four corners" of the search warrant affidavit. *See United States v. Schulz*, 486 F. App'x 838, 841 (11th Cir. 2012) (citation omitted); *United States v. Lockett*, 674 F.2d 843, 845 (11th Cir. 1982) (citations omitted) ("In passing on the validity of the warrant, consideration may be given only to information brought to the attention of the magistrate.").

"Under what is known as the 'exclusionary rule,' evidence seized as a result of an illegal search may not be used by the government in a subsequent criminal prosecution." *Snipes*, 444 F. Supp. 2d at 1206 (citing *Martin*, 297 F.3d at 1312). The exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights" by prohibiting the use of illegally seized evidence in criminal prosecutions. *United States v. Calandra*, 414 U.S. 338, 348 (1974). The rule is designed to deter misconduct by law enforcement by banning evidence obtained in violation of the Fourth Amendment. *United*

*States v. Virden*, 488 F.3d 1317, 1322 (11th Cir. 2007) (citing *Nix v. Williams*, 467 U.S. 431, 442- 43 (1984)).  The rule "has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion." *Wong Sun v. United States*, 371 U.S. 471, 485 (1963).  Under the so-called "fruit of the poisonous tree" doctrine, admissions or confessions that the police induce by confronting a suspect with evidence obtained through an illegal search or seizure must be suppressed.  *See Fahy v. State of Conn.,* 375 U.S. 85, 91 (1963) (holding that "petitioner should have had a chance to show that his admissions were induced by being confronted with the illegally seized evidence"); *see also Amador–Gonzalez v. United States,* 391 F.2d 308, 318 (5th Cir. 1968) (holding a "confession, resulting from [an unlawful] seizure and ... subsequent narcotics arrest, was the 'fruit of the poisoned tree' and therefore inadmissible"), *overruled on other grounds by United States v. Causey,* 834 F.2d 1179 (5th Cir. 1987); *United States v. Timmann*, 741 F.3d 1170, 1182 (11th Cir. 2013).

    D.  <u>Analysis of Taylor's Motions</u>

      1.  Taylor Did Not Establish He Was Entitled To A *Franks* Hearing.

Under *Franks v. Delaware*, a defendant who alleges that law enforcement was dishonest when seeking a search warrant

> is entitled to an evidentiary hearing on the veracity of an affidavit in support of a search warrant [only] if he makes a 'substantial preliminary showing' that (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was essential to the finding of probable cause.

*United States v. Ohoro*, 724 F. Supp. 2d 1191, 1198-99 (M.D. Ala. 2010) (quoting *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006)).  If the defendant establishes an

"allegation of [material] perjury or reckless disregard" by a preponderance of the evidence, the search warrant will be found void and the evidence suppressed. *Ohoro*, 724 F. Supp. 2d at 1199 (quoting *Franks*, 438 U.S. at 156).

This same standard applies to omissions. *See United States v. Jenkins*, 901 F.2d 1075, 1079-80 (11th Cir. 1990) (extending *Franks* to omissions from affidavits). Omissions that are not reckless, but are instead negligent, or insignificant and immaterial, will not invalidate a warrant. *United States v. Reid*, 69 F.3d 1109, 1114 (11th Cir. 1995). Even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause. *Jenkins*, 901 F.2d at 1080.

Yet, a defendant's "allegations must be accompanied by an offer of proof," and "should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons." *Ohoro*, 724 F. Supp. 2d at 1199 (quoting *Franks*, 438 U.S. at 171). Even where a defendant shows by a preponderance that a falsehood was uttered in the warrant application, he faces a "second hurdle [of] materiality" and "bears the burden of showing that, 'absent [the alleged] misrepresentations or omissions, probable cause would have been lacking.' " *Id*. at 1201 (quoting *United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009)); *see also United States v. Burston*, 159 F.3d 1328, 1333 (11th Cir. 1998) (intentional misstatements or omissions must be essential to the finding of probable cause).

Here, the court held a hearing to afford Taylor an opportunity to offer proof that the residence warrant should be held invalid because Wizorek's affidavit contained deliberate

falsehoods, omissions, or was prepared with a reckless disregard for the truth.[16]  Taylor did not satisfy his burden.

First, Taylor's argument that the residence warrant affidavit satisfied the criteria for a *Franks* hearing because it omitted the dating relationship[17] between him and L.B. misses the mark.  Taylor argued during the hearing that the issuing judge should have had an opportunity to assess information regarding a relationship between him and L.B. while reviewing the residence warrant affidavit for probable cause.  As the Government correctly noted, the issuing judge actually had such opportunity as Wizorek's affidavit informed its reader (1) that the victim depicted in the video was L.B., who was "staying with a boyfriend," and (2) Wizorek's search of MPD records produced a recent report of domestic violence against L.B. by Taylor.   (Doc. No. 36-1 at 3, 4.)   Accordingly, the dating relationship between L.B. and Taylor was not omitted from the residence warrant affidavit.

Second, Taylor's argument that Wizorek failed to include in the residence warrant affidavit that Taylor had not been arrested on any of the offenses listed in the affidavit does not justify invalidating the warrant.  The Eleventh Circuit demands that a defendant show that a material omission was deliberate on the part of the affiant for reasons of bad faith, such as to deceive or mislead a magistrate.  *United States v. Whyte*, 928 F.3d 1317, 1333-34 (11th Cir. 2019).  Taylor has not demonstrated how the fact that he had yet to be arrested

---

[16] The undersigned reviewed the recording of the February 25, 2021 hearing during the preparation of this Recommendation.

[17] Taylor changed course and conceded during the hearing that he was not married to L.B. on May 9, 2019, but that she was pregnant with the couple's child at the time of the assault that prompted the investigation.

for allegedly committing a crime against L.B. was material to probable cause, or that Wizorek intentionally omitted the fact in an effort to deceive the issuing judge. Consequently, such an immaterial omission does not implicate *Franks*.  *See Reid*, 69 F.3d at 1114; *Jenkins*, 901 F.2d at 1080.

Third, Taylor's challenge to the combined discrepancies in the search warrant documents simply do not suffice to invalidate a warrant under *Franks*.  This challenge includes the photographic metadata indicating that officers were inside Taylor's home shortly after 9:00 a.m. when Wizorek's returned warrant indicated that officers entered at 10:02 a.m. and left at 11:20 a.m.; the residence warrant showing Magnus was the affiant; unclear handwritten times and dates by Wizorek and the issuing judge on the electronics warrant; and a Montgomery County court stamp showing the electronics warrant was returned on April 20, 2019, two weeks prior to the warrant application on May 9.  Notably, Taylor's metadata argument contests the execution of the warrant, as opposed to the veracity of the underlying affidavit.  *See United States v. Kelley*, 596 F.Supp.2d 1132, 1149 (E.D. Tenn. 2009) ("A *Franks* hearing is an evidentiary hearing during which defendants are allowed to present evidence concerning the veracity of the challenged statements in the search warrant affidavit.").  Taylor has not made a substantial preliminary showing that Wizorek deliberately or recklessly included false statements or omitted material information in the residence warrant affidavit, and the statements or omissions were

essential to the finding of probable cause.  *See Ohoro*, 724 F. Supp. 2d at 1199.

Consequently, Taylor's motion for a *Franks* hearing is due to be denied.[18]

2.  The Residence Warrant Was Valid.

Taylor's Supplemental Motion to Suppress requires the court to revisit many of the

issues he unsuccessfully presented as grounds for a *Franks* hearing.  (Doc. No. 47.)  Now,

this court's task is to determine whether the issuing judge had a "substantial basis for . . .

conclud[ing]" that there was a fair probability, or probable cause, that contraband or

evidence of a crime would be found in Taylor's residence.  *Gates*, 462 U.S. at 238-39;

*Karpordelis*, 569 F.3d at 1310.

Taylor asserts the residence warrant lacked probable cause due to material

inconsistencies which resulted in a constitutionally unreasonable warrantless search of his

residence.  (Doc No. 47 at ¶¶ 15-16, 25, 26.)  The undersigned disagrees.  The residence

---

[18] During the hearing, the court noted Taylor's assertion (*see* Doc. No. 41 at 7, n.2) that there was no need to submit affidavit(s) to establish the necessary falsehoods or omissions to merit a *Franks* hearing.  The court read the instruction in *Ohoro* stating that a challenge to an affidavit must have

allegations of deliberate falsehood [or omission] or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*Ohoro*, 724 F. Supp. 2d at 1999 (quoting *Arbolaez*, 450 F.3d at 1294).  Taylor responded that there was no need for him to submit supporting affidavits because the discrepancies and errors on the face of the Government's search documents and discovery, standing alone, established his right to a *Franks* hearing.  Thus, Taylor asserted he was entitled to a full *Franks* hearing without this court's determination that he had met the dual hurdles of proof and materiality.

The undersigned disagrees.  Taylor's motion was doomed by his failure to provide an offer of proof demonstrating that falsehoods or omissions were contained in the residence warrant affidavit and that those falsehoods or omissions were material to the issuing judge's determination of probable cause.  *Ohoro*, 724 F. Supp. 2d at 1201.

warrant affidavit and supplement explained how videos of Taylor's alleged physical and sexual assault of L.B. came to Wizorek's attention, that L.B. was a girlfriend of Taylor who was staying with him on Wilmington Road, the abuse that is depicted in the three videos, and that Taylor is observed filming L.B. with his cellular telephone.  (Doc. No. 47-1 at 1-2.)  The residence warrant affidavit and supplement further provides that Wizorek, after finding a recent domestic violence report in which L.B. was the victim, conferred with the officer investigating that case and that officer put him in contact with L.B.  (*Id.* at 2.)  The affidavit supplement provides L.B. reiterated the threats of violence made by Taylor to Wizorek and agreed to cooperate in the prosecution.  (*Id.*)  Further, the affidavit contained a range of possible offenses which, as Wizorek described, were depicted on the videos he had witnessed, including rape, sexual abuse, domestic violence assault, strangulation and human trafficking.  (*Id.* at 1-2.)  The affidavit Wizorek presented to the issuing judge therefore "state[d] facts sufficient to justify a conclusion that evidence [of those crimes] will probably be found at the premises to be searched."  *Martin*, 297 F.3d at 1314.  None of Taylor's arguments nullify the sufficiency of the affidavit at issue.  Neither Taylor's metadata argument nor his marital status with L.B. nor the assertion that the affidavit implied that he had been arrested nor his contest of Wizorek's usage of military time nor the failure to leave him a signed copy of the search warrant interfered with or undermined the issuing judge's probable cause determination.[19]  Viewing the facts known

---

[19] Taylor also complains of erroneous dates on the returned electronics warrant and officers' failure to leave a signed copy at his residence.  (Doc. No. 47 at ¶¶ 20, 22.)  His motion asserts that inconsistent dates on the electronics warrant, both stamped and written, suggest the possibility of "misfeasance on behalf of law enforcement."  (Doc. No. 47 at ¶ 20.)  The court notes that Taylor

to the state court judge issuing the residence warrant "as a whole," the residence warrant affidavit and supplement provided a " 'substantial basis' for the finding of probable cause at the time the warrant was issued." *Snipes*, 444 F. Supp. 2d at 1206.  The undersigned finds that the information in the residence warrant was sufficient to establish a "fair probability" that evidence of a crime committed against L.B. would be found in Taylor's residence.  *See generally United States v. Glinton*, 154 F.3d 1245, 1256 (11th Cir. 1998) ("As has often been stated, minor discrepancies in an affidavit should not subvert an officer's good-faith revelations of facts establishing probable cause." (citing *Illinois v. Rodriguez*, 497 U.S. 177, 184-85 (1990); *Maryland v. Garrison*, 480 U.S. 79, 88 (1987))). In short, the undersigned finds that the residence warrant affidavit and supplement provided probable cause for the issuance of the residence search warrant.

Taylor also attacks the validity of the residence warrant because it names Magnus as the affiant on the face of the warrant.  (Doc. No. 47 at ¶ 17; Doc. No. 47-1 at 6.)  The undersigned finds this attack fails.  Such a typographical error on the face of the search warrant does not undermine the probable cause contained in the search warrant affidavit especially where, as here, Wizorek personally appeared before the issuing judge, was correctly named as the affiant with personal knowledge in the search warrant affidavit and was identified in the content of the affidavit.  (Doc. No. 47-1 at 1-2, 6.)  Magnus' name on

---

is being prosecuted in this court for his possession of four firearms and live ammunition discovered in his home during the search authorized by the residence warrant.  (Doc. No. 1.)  The single count indictment against Taylor does not charge any offense which arose from the search of his electronic devices authorized under the electronics warrant.  Indeed, the court has received no information on the searches conducted pursuant to the electronics warrant.

the face of the search warrant alone is a technical error that does not amount to a constitutional violation.  *See United States v. Murphy*, 267 F. App'x 311 (4th Cir. 2008) (upholding warrant which listed one officer, but was signed by another); *United States v. Hyten*, 5 F.3d 1154, 1156-57 (8th Cir. 1993) (holding that affidavit listing incorrect name of affiant did not require suppression); *United States v. Krieg*, Case No. 2:19-CR-04055-BCW, 2020 WL 5539043, at *4 (W.D. Mo. Sept. 15, 2020) (finding warrant valid where judge directed his assistant to sign warrant for him, thus, defendant's primary argument was "technical rather than constitutionally substantive.").

## IV.  CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Defendant's motion for a *Franks* evidentiary hearing (Doc. No. 41) and supplemental motion to suppress (Doc. No. 47) be DENIED.  It is further

ORDERED that the parties shall file any objections to the said Recommendation not later than **September 27, 2021.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the Magistrate Judge's findings and § 636(b)(1) shall bar a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of a party to challenge on appeal the District Court's order based on unobjected-to-factual and legal conclusions accepted or adopted by

the District Court except upon grounds of plain error or manifest injustice.  11th Cir. R. 3-1; *Resolution Trust Co. v. Hallmark Builders, Inc*., 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 13th day of September, 2021.


JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE